432 So.2d 929 (1983)
Joyce OSHINSKI
v.
CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, United Cabs, Inc. and Elmer's Fine Foods, Inc.
No. CA 0488.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1983.
Rehearing Denied June 24, 1983.
*930 Walter M. Babst, Bernard, Cassisa, Babst & Saporito, Metairie, for defendant-appellant United Cabs.
Antonio E. Papale, Jr., Mr. Laurence E. Larmann, W. Marvin Hall, Hailey, McNamara & Hall, Metairie, for defendant-appellant American Mutual.
Frank J. D'Amico, and Vincent Glorioso, Jr. Kierr, Gainsburgh, Benjamin, Fallow & Lewis, New Orleans, for plaintiff-appellee.
Before SCHOTT, BARRY and KLEES, JJ.
SCHOTT, Judge.
This suit arose out of a collision on August 26, 1977, between a taxicab driven by Albert Musacchia and an automobile driven by Margaret Elmer. Plaintiff, Joyce Oshinski, who was a passenger in the taxicab, sued the two drivers, their insurers and United Cabs, Inc., as the alleged employer of Musacchia. The trial court awarded plaintiff a judgment of $150,000 against the insurers of both drivers and United Cabs, Inc. Elmer's insurer, American Mutual Liability Ins. Co., has appealed contesting liability as well as the amount of the award, and plaintiff has appealed seeking an increase in the amount of the award. United Cabs has also appealed on the ground that there is no legal basis for the judgment against it. The insurer of the cab driver has not appealed, having paid its policy limits to plaintiff in satisfaction of her judgment against it.
*931 The principal issue in the case pertains to the liability of Elmer's insurer. It contends that Elmer, who was operating her automobile on the street in a lawful manner when she was struck by the cab as it was existing from a driveway, was free of negligence. Alternatively, the insurer contends that the amount of the judgment was excessive and that the trial judge abused his discretion by awarding excessive expert witness fees.
This accident happened on Moss Street near Esplanade Avenue in the City of New Orleans. At the point of the accident Moss Street is a two-way street paralleling Bayou St. John and it consists of two lanes accommodating moving traffic with a parking lane along the curb across the street from the bayou. At the corner of Moss Street and Esplanade Avenue is a large apartment complex building known as Park Esplanade. In front of the building is a circular driveway enabling traffic to approach the entrance of the apartment complex from Moss Street close to Esplanade and return to Moss Street after passing the entrance. Elmer was proceeding toward the lake on Moss Street with the apartment complex on her right and the bayou across Moss Street on her left. As her automobile was in the process of passing the exit of the driveway, Musacchia, who had picked plaintiff up at the entrance, drove the left front of his cab into the right front door of Elmer's automobile as it drove past the driveway exit.
In his reasons for judgment, the trial judge cited Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970) for the proposition that both drivers were deemed guilty of negligence per se and they had the burden of proof to exculpate themselves from negligence which caused injury to plaintiff. He concluded that Elmer had failed to exculpate herself from the presumption of negligence which consisted of her failing to keep a proper lookout and exceeding the speed limit. Pursuant to Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) we have carefully reviewed the record and concluded that the trial court's findings are not clearly wrong.
Elmer testified that she had been traveling between 25 and 30 miles an hour before the accident and she first saw the taxicab when it hit her automobile. She said her vehicle traveled between 8 and 10 feet after the accident and it was pushed into the left lane of Moss Street into the lane for oncoming traffic. She did not reduce the speed of her automobile before the collision occurred nor did she veer to the left to avoid the collision.
According to Musacchia, he was moving from the driveway at two or three miles per hour. When the front end of his car dropped off the incline he heard Elmer's brakes screeching and he stopped. The Elmer vehicle "piled into" his left front fender after skidding about 20 or 25 feet before hitting his vehicle. He testified that there were automobiles parked on Moss Street from the driveway back to Esplanade so that his view of traffic approaching the driveway on his side of Moss Street was obscured.
Plaintiff offered the testimony of Herman L. Parrish, an expert in the field of accident reconstruction. He testified that a vehicle traveling 30 miles per hour would require 83 feet to stop from the time its driver recognized an emergency requiring the brakes to be applied. He deducted the 8 feet Elmer traveled after the collision and concluded that her automobile traveled 75 feet from the time she first realized she had to stop until the point of impact. Had she been traveling 25 miles per hour, which was the legal speed limit, she would have proceeded but 54.3 feet from the moment she reacted to the danger until the point of impact and no collision would have occurred. According to his calculations there would have been no impact at speeds below 28 miles per hour.
Parrish's calculations are not persuasive because they are based on the assumption that Elmer noted a danger and began to react when she was 75 feet from the point of impact. There is no evidence in the record to support this assumption. However, the trial judge's conclusion that she was exceeding the speed limit is supported by her own admission that she was traveling over 25 miles per hour.
*932 Elmer's insurer contends that her speed, even if excessive, was not the cause of the accident. It argues that Elmer was under no duty to observe the taxicab while it was moving in the driveway and that the sole cause of the accident was Musacchia's negligence in running his cab into the side of her car which was already traversing the driveway when the accident occurred.
However, the trial court also found Elmer negligent in failing to keep a proper lookout. She testified that she never saw the cab at all until the impact and yet the cab necessarily encroached on her path of travel at least to some extent before that impact. The evidence is uncontradicted that there was no oncoming traffic and nothing prevented Elmer from taking some evasive action to avoid the possibility of an impact with the encroaching cab, especially had she not been speeding. The trial court's conclusion that her failure to see the cab contributed at least in part to the accident is not manifestly erroneous.
Elmer's insurer places great reliance on Thompson v. Reserve Insurance Company, 323 So.2d 528 (La.App. 4th Cir.1975). Thompson was proceeding along a street when a taxicab backed out of a driveway into his path. Thompson did not see the cab backing out of the driveway until an instant before the collision and his explanation for not seeing it was that he was looking straight ahead. The trial court found Thompson guilty of contributory negligence on the ground that Thompson could have seen the cab if he had been more observant. This court held that in an instance such as this it is only negligence if the driver with the right of way did not see the other car when he should have and at that time could have avoided the collision. The court first noted that it was defendant's burden of proof to establish Thompson's contributory negligence in that case. In the instant case, under Poche v. Frazier, supra, it was Elmer's insurer's burden to exculpate Elmer from negligence in a suit brought by the passenger of the cab. In the Thompson case the court noted that the defendants did not present any evidence of the speed of either vehicle or the relative positions and motions of the automobiles to show that Thompson could have avoided the accident. In the instant case, Elmer admitted to speeding and the relative positions of these vehicles was established for the trial court to conclude that Elmer had to be some distance from the cab when she applied her brakes and was in a position simply to veer to the left in order to avoid a collision with the cab.
Both sides argue that the trial judge abused his discretion in the amount of the award to plaintiff. She was 28 years of age at the time of the accident and suffered extensive injuries to her cervical spine. From the time of the accident in August, 1977, until April, 1978, she was hospitalized on four occasions for conservative care to her neck, and in April, 1978 a disc was removed from the C4 to C5 interspace and a fusion performed. After some period without difficulty following her recovery from this surgery she began to experience pain and was extensively treated at the pain unit of Hotel Dieu Hospital. In August, 1981, she was again hospitalized and discs were removed from the C5 to C6 and C6 to C7 interspaces with a second fusion performed at C5 to C6. By the time of the trial in November, 1981, she was still having some discomfort but most of her symptoms had subsided. Of course she was left with some residual disability as a result of the fusions in her cervical spine. She incurred over $35,000 of medical expenses and some significant loss of wages which special damages the trial court included in his award of $150,000. While both sides have argued persuasively that this judgment should have been higher or lower, we are unable to conclude that there was a clear abuse of discretion by the trial court such as to warrant a change in the amount of the award considering the principles set forth in Reck v. Stevens, 373 So.2d 498 (La.1979).
Finally, Elmer's insurer contends that expert witness fees awarded to plaintiff's orthopedist in the amount of $300, her neurosurgeon in the amount of $500 and the accident reconstruction expert in the amount of $600 were abusive of the trial court's discretion. These expert witness fees were set by the court following a rule *933 to show cause brought by plaintiff in accordance with LSA-R.S. 13:3666 B(2). The fixing of the fee of an expert witness is within the sound discretion of the trial court and should not be disturbed on appeal unless manifestly erroneous. Johnson v. International Ins. Co., 347 So.2d 1279 (La.App. 1st Cir.1977); Williams v. Harvey, 328 So.2d 901 (La.App. 4th Cir.1976). The cases cited by appellant recognized this principle and in three of the cited cases, Comeaux v. Dairyland Ins. Co., 399 So.2d 802 (La.App. 3rd Cir.1981); Chmurka v. Southern Farm Bur. Ins. Co., 357 So.2d 1207 (La.App. 4th Cir. 1978) and Johnson v. International Ins. Co., supra, the courts of appeal left the expert witness fees awarded by the trial courts intact, stating that there was no abuse of the trial court's discretion in each case. In Skains v. Allstate Insurance Co., 264 So.2d 230 (La.App. 4th Cir.1972) the court reduced expert fees to two doctors of $150 and $100 respectively to $75 and $50 respectively, commenting on the number of pages in the transcript that their testimony covered and the number of minutes they testified. In reducing the fees the court commented that the "relevant factors" led to a reduction of the fees. In the instant case, appellant states in its brief that Dr. Edmonds and Mr. Parrish testified for less than an hour and Dr. Richardson testified for no more than one-half hour. The record shows that Dr. Edmonds' testimony covers 56 pages of the record, Dr. Richardson's but 25 pages and Mr. Parrish's 78 pages. In Williams v. Harvey, 328 So.2d 901 (La.App. 4th Cir.1976) this court reduced awards to four physicians in the amount of $2500, $750, $1500 and $2500 to $300 each with the comment that "we are at a complete loss to comprehend the basis upon which [these] awards were made ..." The court also affirmed "lesser awards" to two other doctors of $200 and $300 respectively, noting that they were somewhat high but not an obvious abuse. Considering inflation alone, the same approach might be taken to the awards of $300 to Dr. Edmonds and $500 to Dr. Richardson. As to Mr. Parrish he does appear to have been on the witness stand for some considerable period of time and was subjected to intense cross examination. While his and the other awards may be arguably high we cannot conclude that they constitute an abuse of the trial court's discretion under the cases considered and R.S. 13:3666.
Finally, United Cabs' appeal from the judgment against it is well founded. There is no evidence to show that Musacchia was an employee of United Cabs, and indeed in oral argument all parties conceded that the trial court erred in casting United Cabs in judgment.
Accordingly, the judgment appealed from is affirmed in all respects except that the judgment in favor of plaintiff, Joyce Oshinski, against United Cabs, Inc., is reversed and set aside and there is judgment in favor of United Cabs, Inc., dismissing her case against it. American Mutual Liability Insurance Co. is to pay all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART.